# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| LEONARD J. PANELLA, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) CIVIL ACTION NO. _____ ) |
| TESCO CORPORATION, FERNANDO R. ASSING, JOHN P. DIELWART, R. VANCE MILLIGAN, DOUGLAS R. RAMSAY, ROSE M. ROBESON, ELIJIO V. SERRANO, and MICHAEL W. SUTHERLIN, | ) COMPLAINT FOR ) VIOLATION OF FEDERAL ) SECURITIES LAWS ) ) ) ) |
| Defendants. | ) ) ) |

Plaintiff Leonard J. Panella ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.  Plaintiff brings this action as a public stockholder of Tesco Corporation ("Tesco" or the "Company") against the members of the Tesco Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of their attempt to sell the Company to Nabors Industries Ltd. ("Nabors" or "Parent").

2.  On August 14, 2017, Nabors and the Company announced they had entered into an Agreement and Plan of Merger dated August 13, 2017 ("Merger Agreement"), by which Nabors, through its wholly owned subsidiary, Nabors Maple Acquisition Ltd. ("Merger Sub"), will acquire

all of the outstanding shares of Tesco in an all-stock transaction in which Tesco's stockholders will receive 0.68 shares of Nabors common stock for each share of Tesco common stock (the "Proposed Transaction"). Based on the closing price of $6.80 per share of Nabors common stock on August 11, 2017, this represents a total value of $4.62 per share of Tesco common stock.

3. The Proposed Transaction has a total transaction value of approximately $215 million and is expected to close as soon as the fourth quarter of 2017.

4. On September 18, 2017, Tesco caused the filing of the Preliminary Proxy Statement on Form PREM14A with the SEC (the "Proxy"). The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the financial projections that were prepared by Company management and relied upon by J.P. Morgan Securities, LLC ("J.P. Morgan"), the Company's financial advisor. The Proxy further materially misleads Tesco stockholders by omitting any GAAP reconciliation of the non-GAAP financial measures contained in the Company's projections, and omitting material information pertaining to the financial analysis underlying J.P. Morgan's opinion of the fairness of the Merger Consideration.

5. Without additional information the Proxy is materially misleading in violation of federal securities laws.

6. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

7. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until the material information discussed below is disclosed to Tesco's stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) Tesco is headquartered in this District; and (ii) the corporate transactions, actions, and wrongs complained of herein, can only occur in this District.

## PARTIES AND RELEVANT NON-PARTIES

11. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of Tesco.

12. Tesco is a corporation organized and existing under the laws of the Province of Alberta, Canada. It maintains its corporate headquarters at 11330 Clay Road, Suite 350, Houston, Texas, 77041. Tesco's common stock is listed for trading on the Nasdaq stock exchange.

13. Defendant Fernando R. Assing ("Assing") has served as a director, the Chief Executive Officer, and President of the Company since December 2014.

3

14.     Defendant John P. Dielwart ("Dielwart") has served as a director of the Company since 2014.

15.     Defendant R. Vance Milligan ("Milligan") has served as a director of the Company since 2006.

16.     Defendant Douglas R. Ramsay ("Ramsay") has served as a director of the Company since November 30, 2016.

17.     Defendant Rose M. Robeson ("Robeson") has served as a director of the Company since 2015.

18.     Defendant Elijio V. Serrano ("Serrano") has served as a director of the Company since 2014.

19.     Defendant Michael W. Sutherlin ("Sutherlin") has served as Chairman of the Board of Directors since January 2014 and as a director of the Company since 2012.

20.     Defendants referenced in ¶¶ 13 through 19 are collectively referred to as Individual Defendants and/or the Board.

21.     Relevant non-party Nabors is a Bermuda exempted company, organized and existing under the laws of Bermuda. Nabors maintains its principal executive officers at Crown House, 4 Par-La-Ville Road, Second Floor, Hamilton, HM08, Bermuda. Nabors owns and operates the world's largest land-based drilling rig operation and provides offshore platform drilling in the U.S. and international markets.

22.     Relevant non-party Merger Sub is a corporation organized under the laws of Alberta, Canada, and wholly-owned subsidiary of Nabors that was created for the purposes of effectuating the Proposed Transaction.

4

**FURTHER SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

23. Tesco is a global leader and provider of highly engineered technology-based solutions for drilling, servicing, and completion of wells for the upstream energy industry. TESCO's operations consist of top drives and automated pipe handling equipment sales and rentals; aftermarket sales and services; and tubular services, including related products and accessories sales. Tesco trades on the Nasdaq stock exchange under the ticker symbol "TESO."

24. During the process leading up to the Merger Agreement, Tesco engaged J.P. Morgan as its financial advisor.

25. On July 11, 2017, in response to an offer letter from Nabors, J.P. Morgan participated in a teleconference with members of Tesco's Board and management "to discuss preliminary thoughts on the proposal and the possibility of approaching other potential counterparties who might have an interest in a strategic transaction."

26. The next day, July 12, 2017, Tesco formally engaged J.P. Morgan as its financial advisor in connection with the Proposed Transaction.

27. J.P. Morgan continued to advise the Tesco Board and management throughout the process, and performed tasks that included reaching out to potential counterparties, negotiating the Merger Consideration with Nabors' financial advisor, performing financial analyses of Tesco, Nabors, and the Proposed Transaction, and providing a fairness opinion to the Tesco Board regarding the consideration offered to Tesco stockholders in the Proposed Transaction.

28. On August 13, 2017, the Tesco Board met to consider the Proposed Transaction. During this meeting, J.P. Morgan "reviewed with the Board its financial analysis of the

consideration provided for in the Arrangement Agreement and delivered to the Board its oral opinion, which was later confirmed by delivery of a written opinion" as to the fairness of the Proposed Transaction. At the conclusion of this meeting, the Board unanimously determined that the Proposed Transaction "is fair to Tesco's stockholders."

29.  In a press release dated August 14, 2017, the Company announced that it had entered into the Merger Agreement the night before.

30.  The announcement read, in relevant part:

> HOUSTON, August 14, 2017 — Tesco Corporation ("TESCO" or the "Company") (NASDAQ: TESO) today announced that it has entered in to an Arrangement Agreement ("Agreement") with Nabors Industries Ltd. ("Nabors") (NYSE: NBR) to combine with Nabors in a stock-for-stock transaction. TESCO shareholders will be issued 0.68 common shares of Nabors for each outstanding share of common stock of TESCO. Upon consummation of this transaction, TESCO shareholders will own approximately 10% of the outstanding shares of Nabors. The transaction has been approved by the board of directors of both companies and is subject to approval by TESCO security holders and satisfaction of customary closing conditions and regulatory approvals, including court approval required by Section 3(a)(10) of the Securities Act of 1933, as amended.
>
> This transaction values TESCO common stock at $4.62 per share based on Nabors closing share price of $6.80 on the New York Stock Exchange on August 11, 2017. This represents a premium of 19% to TESCO's closing price on the NASDAQ Stock Market on the same date, and represents a premium of 30% to TESCO's enterprise value based on TESCO's June 30, 2017 cash balance.
>
> Michael W. Sutherlin, TESCO's Non-Executive Chairman of the Board said "With this transaction, TESCO will now have an expanded platform, which will allow for acceleration of its strategy and increase the potential for market share gains around key industry trends. The combination will provide significant value to TESCO shareholders by participating in a stronger and broader offering of complementary rig equipment product lines and tubular services."
>
> "The addition of TESCO to our company represents another step forward for both our rig equipment and Nabors Drilling Solutions business. TESCO is respected for the quality of their product offerings and aftermarket service levels. I am eager to realize the benefits to our combined customers and shareholder groups that this combination will provide," said Nabors' Chairman, President and Chief Executive Officer Anthony G. Petrello.

>Fernando Assing, TESCO's President and Chief Executive Officer, commented, "This is a very exciting opportunity to combine two world class companies that are highly focused on delivering best in class services to the oil and gas industry. This combination will further reinforce Nabors position as a leading rig equipment and drilling automation provider by integrating TESCO's advanced tubular services technology and products into the Nabors global rig footprint and NDS services. The new expanded platform also creates significant career opportunities for TESCO's employees as part of a much larger international organization."

*The Proxy Misleads Tesco Stockholders By Omitting Material Information*

31. Defendants filed the Proxy on September 18, 2017. The Proxy, which recommends that the Company's stockholders vote in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Misleading Statements and Omissions Regarding Tesco's Financial Projections*

32. The Proxy fails to provide material information concerning the Company management's financial projections and the financial forecasts for Tesco provided to the Board and J.P. Morgan.

33. The Proxy discloses "Certain Prospective Financial Information Prepared by TESCO" that the Company's management provided to the Board, J.P. Morgan, Nabors and Nabors' financial advisor for fiscal years 2017-2018 (the "Business Management Case") during the process leading up to the execution of the Merger Agreement.

34. The Proxy only provides projection of the Business Management Case for two metrics, Revenue and EBITDA, for Base Case and Growth Case scenarios for the years 2017 and 2018. The Growth Case scenario "was contingent upon and assumes favorable market conditions and takes into account other assumptions related to successful entry into several offshore contracts for tubular services and additional product sales." The Proxy further discloses that "TESCO's management assumptions were generally based on internally developed conclusions, information

from clients and information gathered through established industry sources, including market analysis."

35. In providing its fairness opinion to the Board, the Proxy notes that J.P. Morgan "reviewed certain internal financial analyses and forecasts prepared by the managements of TESCO and Nabors relating to their respective businesses, as well as the estimated amount and timing of cost savings and related expenses and synergies expected to result from the Arrangement." The advisor also "held discussions with certain members of the management of TESCO and Nabors with respect to certain aspects of the Arrangement, and the past and current business operations of TESCO and Nabors, the financial condition and future prospects and operations of TESCO and Nabors."

36. However, the Proxy later notes that J.P. Morgan prepared a discounted cash flow analysis to support its fairness opinion, and "calculated the unlevered free cash flows that TESCO is expected to generate during fiscal years 2017 through 2022 based upon financial projections prepared by the management of TESCO." For this analysis, J.P. Morgan defined unlevered free cash flows to represent "EBITDA less taxes capital expenditures, increases in net working capital and certain other one-time cash expenses, as applicable."

37. The Proxy thus omits several material facts necessary for an honest disclosure of the Company's financial projections.

38. First, the Proxy omits material line item metrics used to calculate the non-GAAP measures of EBITDA and Unlevered Free Cash Flow. The omission of such projections renders the non-GAAP projections included in the Proxy materially incomplete and therefore misleading.

39. Second, the Proxy omits projections of Unlevered Free Cash Flow for the years 2017 through 2022 calculated by J.P. Morgan for use in its Discounted Cash Flow Analysis.

8

40. Third, the Proxy omits projections of both EBITDA and Revenue for the years 2019 through 2022 for both case scenarios prepared by Tesco management.

41. Fourth, the projections fail to include the line items necessary to reconcile the EBITDA projections of either case scenario to GAAP metrics.

42. When a company discloses information in a proxy that includes non-GAAP financial metrics, the Company must also disclose comparable GAAP metrics and a quantitative reconciliation of forward-looking information. 17 C.F.R. § 244.100.

43. Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial metrics in communications with stockholders. Recently, former SEC Chairwoman Mary Jo White stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Tesco has included in the Proxy), implicates the centerpiece of the SEC's disclosure regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

---

[1] Mary Jo White, Chairwoman, SEC, Keynote Address at the International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html.

Further, the SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[2] In fact, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial metrics that demonstrate the SEC is indeed tightening policy.[3] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide *any* reconciling metrics that are available without unreasonable efforts.

44. Thus, the above-referenced line-item projections that have been omitted from the Proxy are precisely the types of "reconciling metrics" that the SEC has recently indicated should be disclosed to render non-GAAP financial projections not misleading to shareholders. Defendants must disclose the following line items used to calculate the non-GAAP financial measures for Tesco: (i) earnings; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) capital expenditures; (vi) stock-based compensation; (vii) changes in net working capital; and (viii) proceeds from the disposal of assets.

***Misleading Statements and Omissions Regarding J.P. Morgan's Financial Analysis***

45. The Proxy fails to disclose the methodologies, key inputs, and multiples relied upon and observed by J.P. Morgan in preparing its fairness opinion that buttresses the recommendation

---

[2] *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. TIMES, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.
[3] *Non-GAAP Financial Measures, Compliance & Disclosure Interpretations*, SEC (May 17, 2016), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

of the Board, misleading Company stockholders as to the Board's best understanding of the fairness of the Merger Consideration.

46. With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy omits the case scenario projections used by J.P. Morgan to calculate the unlevered free cash flows and ultimate range of fair values.

47. J.P. Morgan's choice of case scenarios is extremely material as the scenarios provide for incredibly disparate values. For example, the base case projection for EBITDA in 2018 is merely $2.5 million, while the growth case projections provide for $22.0 million in EBITDA, an increase of almost 1000%. Because the projections provided by Tesco management do not include the years 2019-2022 used by J.P. Morgan, Tesco stockholders have no indication of how much further the two scenarios diverge.

48. With respect to the *Public Trading Multiples Analysis*, the Proxy omits the financial metrics for each of the selected companies, or even summary statistics as to those same financial metrics. Instead, the Proxy discloses only the reference range selected by J.P. Morgan, without reference to any of the actual multiples found in its analysis.

49. Furthermore, the Proxy omits the value of Tesco's Projected EBITDA for the year ending 2019 used by J.P. Morgan to prepare a range of fair values for the merger consideration in the *Public Trading Multiples Analysis*. This value is never disclosed, nor is it disclosed whether the value comes from Tesco management's Base Case scenario or Growth Case Scenario.

50. Here, where the Company approached no other potential strategic partners, these analyses are material and provide the only benchmark by which to judge the fairness of the consideration offered in a proposed transaction.  Further information on the methodology is material where, as here, the description of the analysis fails to provide key inputs and the resulting

11

fairness range calculated by the financial advisor. Thus, the details of J.P. Morgan's analyses are material to stockholders, and disclosing some, but not all, details misleads shareholders as to the financial adviser's basis for its fairness opinion.

51. Defendants' failure to provide Tesco stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information. The material information described above that was omitted from the Proxy takes on actual significance in the minds of Tesco stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other Tesco stockholders will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 and 17 C.F.R. § 244.100 Promulgated Thereunder**

52. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53. Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

54. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material

12

fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

55. Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading and omits material facts, as set forth above. Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

56. All of the relevant information concerning the Company's financial projections was readily available to all Defendants at all relevant times. The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth, or were grossly negligent in failing to know.

57. The misrepresentations and omissions in the Proxy are material to Plaintiff and the Tesco stockholders, and Plaintiff and the Tesco stockholders will be deprived of their right to cast a properly informed vote on the Proposed Transaction.

58. Plaintiff and the Tesco stockholders have no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. The Individual Defendants acted as controlling persons of Tesco within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Tesco, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

61. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

63. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

64. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

65. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

66.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A)     declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(B)     preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

(C)     to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(D)     awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

   (E) awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

   (F) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

 Plaintiff demands a trial by jury.

| | |
|---|---|
| Dated: September 28, 2017 | **KENDALL LAW GROUP, PLLC** |
| | By:   */s/ Joe Kendall* |
| **OF COUNSEL:** | Joe Kendall<br>Texas Bar No. 11260700<br>jkendall@kendalllawgroup.com |
| **LEVI & KORSINSKY, LLP** | Jamie J. McKey |
| Donald J. Enright | Texas Bar No. 24045262 |
| Elizabeth K. Tripodi | jmckey@kendalllawgroup.com |
| 1101 30th Street, N.W., | 3232 McKinney Avenue, Suite 700 |
| Suite 115 | Dallas, TX 75204 |
| Washington, DC 20007 | Telephone:  (214) 744-3000 |
| (202) 524-4290 | Facsimile:  (214) 744-3015 |
| | *Attorneys for Plaintiff* |